## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

JODIE OTTENI,
an individual,

        Case No.:

      Plaintiff,

v.

EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company, and
WELLS FARGO BANK, N.A.
a national association,

      Defendants.

_____/

### NOTICE OF LEAD COUNSEL – LOCAL RULE 2.02(a)

Pursuant to Middle District of Florida Local Rule 2.02(a), Aaron M. Swift, Esq. is designated as Lead Counsel for Plaintiff.

### COMPLAINT

**COMES NOW**, Plaintiff, JODIE OTTENI (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), TRANS UNION, LLC (hereinafter, "Trans Union"), and WELLS FARGO BANK, N.A. (hereinafter,

1

"Wells Fargo") (hereinafter collectively, "Defendants").  In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.　　This is an action for damages for violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq.* (hereinafter, the "FCRA") wherein Equifax, Experian, and Trans Union received disputes from Plaintiff yet each incorrectly reported and verified inaccurate derogatory information after Plaintiff fully settled an account furnished by Wells Fargo to Equifax, Experian, and Trans Union.

2.　　This is also an FCRA action wherein Wells Fargo incorrectly reported and inaccurately verified inaccurate derogatory information after Plaintiff fully settled an account furnished by Wells Fargo to Equifax, Experian, and Trans Union, and afte Wells Fargo received notice of Plaintiff's repeated disputes from Equifax, Experian, and Trans Union.

## JURISDICTION, VENUE & PARTIES

3.　　Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq.*

4.　　Defendants are subject to the jurisdiction of this Court as each regularly transacts business in this District, and the events described herein occur in this District.

5.　　Venue is proper in this District as the acts and transactions described herein occur in this District.

6.　　At all material times herein, Plaintiff is a natural person residing in Sarasota County, Florida.

7.      At all material times herein, Wells Fargo is a national association with its principal place of business located at 420 Montgomery Street, San Francisco, California 94163.

8.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia, with its principal place of business located at 1550 W Peachtree Street, Atlanta, Georgia 30309.

9.      At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

10.     At all material times herein, TransUnion is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

11.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

12.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

13.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

14.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

15.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

16.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the

4

information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

17.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

18.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

## GENERAL ALLEGATIONS

19.    At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual.

20.    At all material times herein, Defendants each credit report information concerning a Visa credit card referenced by account number ending -8005, furnished by Wells Fargo (hereinafter, the "Account").

21.    At all material times herein, Wells Fargo is a "person" that furnishes information to credit reporting agencies as provided in the FCRA and as defined by

15 United States Code, Section 1681s-2.

22.    At all material times herein, Equifax is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

23.    At all material times herein, Experian is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Experian disburses such consumer reports to third parties under contract for monetary compensation.

24.    At all material times herein, Trans Union is a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports. Trans Union disburses such consumer reports to third parties under contract for monetary compensation.

25.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

26.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

27.     On or about April 10, 2016, Plaintiff opened a credit card account (i.e., the Account) with Wells Fargo.

28.     Prior to or about 2020, Plaintiff fell behind on payments with respect to the Account.

29.     During or about February 2020, Wells Fargo charged off the Account with an original charge off balance of $974.00.

30.     During or about April 2022, Wells Fargo and Plaintiff reached a settlement agreement (hereinafter, "Settlement") wherein Wells Fargo agreed to accept—and Plaintiff agreed to pay—$292.00 to settle the Account balance in full.

31.     On or about April 8, 2022, Plaintiff paid Wells Fargo $292.00 to settle the Account in full.

32.     As such, as of April 8, 2022, Wells Fargo could no longer claim that Wells Fargo charged off and/or wrote-off $974.00.

33.     At most, Wells Fargo charged off $682.00 because Wells Fargo received Plaintiff's $292.00 Settlement payment.

34.     Additionally, as of at least April 8, 2022, Plaintiff's Account's balance was zero and Plaintiff was responsible for no debt to Wells Fargo on the Account.

### Plaintiff's First Dispute

35.     During or about June 2023, Plaintiff obtained copies of their credit

reports as maintained by Equifax, Experian, and Trans Union.

36. More specifically, as of June 12, 2023, Trans Union reported the Account with reporting a "last payment" of $0.00 in April 2022.

37. To be clear, Plaintiff last made a payment of $292.00 in April 2022.

38. Additionally, Trans Union reported the Account as charged off in each month between May 2022 and March 2023 and reported "PRL" or "CBG" for the months of July 2017, October 2017, January 2018, April 2018, July 2018, October 2018, November 2018, January 2019, February 2019, April 2019, May 2019, July 2019, August 2019, October 2019, November 2019, and January 2020.

39. Such information is false, as the Account was not charged off until February 2020 and Plaintiff settled the Account no later than April 8, 2022.

40. As of June 12, 2023, Equifax and Experian each reported the Account with a date of last payment in April 2022 but with no amount corresponding.

41. To be clear, Plaintiff last made a payment of $292.00 in April 2022.

42. Furthermore, Experian reported the Account as closed on May 2022 with a last payment of "$0" in the monthly payment history and with a balance of "$974 written off."

43. To be clear, $974 is the original balance owed on the Account, which Plaintiff paid $292.00 towards on April 8, 2022 to settle and close the Account.

44. As such, $682.00 is the most that Wells Fargo can now report as written off.

45. Furthermore, across Plaintiff's Equifax, Experian, and Trans Union

8

reports, the monthly payments history was inconsistent and conflicting from one report to the next.

46.    As such, on or about September 28, 2023, Plaintiff sent a written dispute letter with the assistance of her attorney to Equifax, Experian, and Trans Union (hereinafter, "First Dispute").

47.    Plaintiff's First Dispute described the Account, the payment history information, the Settlement, and Plaintiff's payment.

48.    Plaintiff's First Dispute requested that any information that could not be verified be deleted and if any of the disputed information was verified, that Equifax, Experian, and Trans Union provide a description of the procedures used to verify the accuracy and completeness of the Account's information.

49.    Equifax received Plaintiff's First Dispute.

50.    Experian received Plaintiff's First Dispute.

51.    Trans Union received Plaintiff's First Dispute.

52.    Trans Union communicated Plaintiff's dispute to Wells Fargo.

53.    Wells Fargo verified the purported accuracy of all information about the Account that it had previously reported to Trans Union.

54.    On or about October 10, 2023, Trans Union sent a response to Plaintiff, purportedly verifying the reporting of the Account as accurate and continued reporting the Account with incorrect charged off amounts and incorrect payment history on Plaintiff's credit report.

55.    Equifax failed to respond to Plaintiff's First Dispute.

56. Experian failed to respond to Plaintiff's First Dispute.

**Plaintiff's Second Dispute**

57. On or about January 17, 2024, Plaintiff sent *another* written letter with the assistance of her attorney to Equifax, Experian, and Trans Union *again* disputing reporting of the Accounts (hereinafter, "Second Dispute").

58. Plaintiff's Second Dispute *again* described the Accounts, the Settlement, and Plaintiff's payment.

59. Plaintiff's Second Dispute *again* requested that any information that could not be verified be deleted and if any of the disputed information was verified, that Equifax, Experian, and Trans Union provide a description of the procedures used to verify the accuracy and completeness of the Account's information.

60. Equifax received Plaintiff's Second Dispute.

61. Experian received Plaintiff's Second Dispute.

62. Trans Union received Plaintiff's Second Dispute.

63. Equifax failed to respond to Plaintiff's Second Dispute.

64. Experian failed to respond to Plaintiff's Second Dispute.

65. Trans Union failed to respond to Plaintiff's Second Dispute.

66. Because Plaintiff did not receive dispute results from Defendants in response to the Second Dispute, Plaintiff obtained her credit reports as maintained by Experian and Trans Union.

67. As of March 23, 2024, Experian still reported the Account with "$974

written off" and with a blank "Recent payment" section.

68.     As of March 24, 2024, Trans Union still reported the Account with a last payment of $0 in April 2022.

<strong><u>Plaintiff's Third Dispute</u></strong>

69.     On or about June 6, 2024, Plaintiff sent *another* written letter with the assistance of her attorney to Equifax, Experian, and Trans Union *again* disputing reporting of the Accounts (hereinafter, "Third Dispute").

70.     Plaintiff's Third Dispute *again* described the Accounts, the Settlement, and Plaintiff's payment.

71.     Plaintiff's Third Dispute *again* requested that any information that could not be verified be deleted and if any of the disputed information was verified, that Equifax, Experian, and Trans Union provide a description of the procedures used to verify the accuracy and completeness of the Account's information.

72.     Equifax received Plaintiff's Third Dispute.

73.     In response to Plaintiff's Third Dispute, Equifax claimed that it could not identify Plaintiff from the information provided and requested further documentation to confirm Plaintiff's identity.

74.     Trans Union received Plaintiff's Third Dispute.

75.     On or about June 28, 2024, Trans Union sent a response to Plaintiff, purportedly verifying the reporting of the Account as accurate and continued reporting the Account with a last payment of $0.

11

76. On or about July 17, 2024, Plaintiff sent a letter to Equifax with the additional requested information, including a copy of Plaintiff's driver's license and an excerpt from Plaintiff's most recent tax return for identification purposes.

77. On or about July 31, 2024, Equifax claimed that the documents received from Plaintiff were illegible and again requested additional information from Plaintiff to identify Plaintiff.

78. Experian failed to send dispute results to Plaintiff in response to Plaintiff's Third Dispute.

79. Equifax failed to send dispute results to Plaintiff in response to Plaintiff's Third Dispute.

80. Between 2024 and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading Account information.

## Damages

81. Plaintiff has retained Undersigned Counsel for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

82. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's dispute efforts, Plaintiff must endure the erroneous and inaccurate reporting of the Account.

12

83.     Plaintiff further dealt with the stress and anxiety of feeling hopeless, believing that she would continue to be evaluated for credit upon the erroneous and incorrect reporting and that Plaintiff would instead pay higher interest rates in the event she could obtain financing.

84.     Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct, Defendants defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Defendants unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's Account following Plaintiff's repeated disputes, and Plaintiff did not receive the full benefit of her Settlement payment to Wells Fargo.

85.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

**COUNT ONE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

86.     Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the

credit reports and credit files published and maintained concerning Plaintiff.

87.    Equifax, Experian, and Trans Union each willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

88.    As described above, Wells Fargo initially charged-off $974.00 on the Account.

89.    However, in April 2022, Plaintiff agreed to pay—and Wells Fargo agreed to accept—$292.00 to settle the Account balance in full, and Plaintiff paid Wells Fargo $292.00 in April 2022.

90.    As such, at most, Wells Fargo could have charged-off $682.00 on the Account and Defendants should not report any derogatory payment information on the Account after April 2022.

91.    Despite Plaintiff paying $292.00 in April 2022 to settle the Account in full, Equifax, Experian, and Trans Union reported the Account with conflicting payment history information, late payment information in months after April 2022, and failed to accurately report the updated charge-off balance in the amount of $674.00.

92.    Following repeated disputes from Plaintiff which advised Equifax, Experian, and Trans Union of their respective reporting errors on the Account, Equifax, Experian and Trans Union *continued* to report inaccurate late payment information in months after April 2022 and failed to accurately report the updated charge-off balance in the amount of $674.00.

93.     Such reporting of the Accounts is false and evidences Equifax's, Experian's, and Trans Union's respective failures to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

94.     Between 2024 and the date of this Complaint, Equifax, Experian, and Trans Union generated and published Plaintiff's credit reports to Plaintiff's creditors and potential lenders including the above-referenced inaccurate, incomplete, and/or materially misleading Account information.

95.     Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

96.     As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, Plaintiff was deterred from making credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax's, Experian's, and Trans Union's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with false information resulting in the Account being reported as derogatory, negative, and/or adverse.

97.     Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit

worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's repeated disputes.

98.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

99.    Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE**
**SECTIONS 1681i(a)(1), i(a)(4), i(a)(5), and i(a)(6)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

100.   Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1),  1681i(a)(4), 1681i(a)(5), and 1681i(a)(6) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files; (2) failing to review and consider all relevant information

16

received in Plaintiff's disputes, including all relevant attachments; (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified; and (4) failing to provide written notice of dispute results to Plaintiff within five (5) business days after the completion of a reinvestigation.

101. More specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

102. Defendants received Plaintiff's First Dispute, Second Dispute, and Third Dispute.

103. Plaintiff's First Dispute, Second Dispute, and Third Dispute explained that Plaintiff paid and settled her Wells Fargo Account in April 2022 via a $292.00 payment to settle the Account in full, advised Defendants of conflicting monthly payment history reported by Defendants, advised that the charge-off balance on the Account should be $674.00 *at most*, and advised that Defendants were reporting the Account with derogatory payment information in months after April 2022.

104. Despite Plaintiff's repeated disputes, Equifax, Experian, and Trans Union failed to request any documents from Wells Fargo and continued to report the Account with conflicting payment history information, late payment information in months after April 2022, and an inaccurate charge-off balance.

105. In response to Plaintiff's First Dispute and Third Dispute, Trans Union purportedly verified its reporting with Wells Fargo and continued reporting the errors

17

identified in Plaintiff's First Dispute.

106.    Despite Trans Union receiving Plaintiff's Second Dispute, Trans Union failed to send *any* dispute results to Plaintiff regarding the Second Dispute.

107.    Trans Union did not conduct an investigation or re-investigation in response to Plaintiff's Second Dispute.

108.    Despite Equifax receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute, Equifax failed to send *any* dispute results to Plaintiff.

109.    Equifax did not conduct an investigation or re-investigation in response to Plaintiff's First Dispute, Second Dispute, and/or Third Dispute.

110.    Despite Experian receiving Plaintiff's First Dispute, Second Dispute, and Third Dispute, Equifax failed to send *any* dispute results to Plaintiff.

111.    Experian did not conduct an investigation or re-investigation in response to Plaintiff's First Dispute, Second Dispute, and/or Third Dispute.

112.    Rather than conduct their own, independent investigation/re-investigation regarding Plaintiff's repeated disputes, Equifax, Experian, and Trans Union solely relied on information supplied by Wells Fargo.

113.    Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

114.    Equifax's, Experian's, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit

18

files.

115.    Such reporting is false and evidences Equifax's, Experian's, and Trans Union's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

116.    Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted reasonably.

117.    Equifax's, Experian's, and Trans Union's investigation/reinvestigations of Plaintiff's disputes were not conducted in good faith.

118.    Equifax's, Experian's, and Trans Union's investigation/reinvestigation procedures are unreasonable.

119.    Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

120.    Equifax's, Experian's, and Trans Union's investigation/reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Accounts.

121.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Equifax, Experian, and Trans Union's erroneous and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated

19

for credit using consumer reports that reported the Account with false information resulting in the Account being reported as derogatory, negative, or adverse.

122.    Overall, Equifax, Experian, and Trans Union defamed Plaintiff's credit worthiness as well as Plaintiff's personal character, and Equifax, Experian, and Trans Union unfairly discriminated against Plaintiff by ignoring—or failing to reasonably review—Plaintiff's repeated disputes.

123.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

124.    Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(2), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to Wells Fargo only)**

Plaintiff re-alleges paragraphs one (1) through eighty-five (85) as if fully restated herein and further states as follows:

125.    Wells Fargo is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports to Equifax, Experian,

and Trans Union, failing to fully and properly investigate Plaintiff's repeated disputes, failing to review all relevant information regarding the same, and failing to correctly report the Account on Plaintiff's credit reports after investigating Plaintiff's disputes.

126.    As described above, Wells Fargo initially charged-off $974.00 on the Account.

127.    However, in April 2022, Plaintiff agreed to pay—and Wells Fargo agreed to accept—$292.00 to settle the Account balance in full, and Plaintiff paid Wells Fargo $292.00 in April 2022.

128.    As such, at most, Wells Fargo could have charged-off $682.00 on the Account and Defendants should not report any derogatory payment information on the Account after April 2022.

129.    Despite Plaintiff paying $292.00 in April 2022 to settle the Account in full, Equifax, Experian, and Trans Union reported the Account with conflicting payment history information, late payment information in months after April 2022, and failed to accurately report the updated charge-off balance in the amount of $674.00.

130.    At minimum, Wells Fargo received notice of Plaintiff's First Dispute and Third Dispute from Trans Union.

131.    Despite Wells Fargo receiving notice of Plaintiff's First Dispute and Third Disputes, Wells Fargo willfully and/or negligently reported inaccurate credit information regarding the Account with incorrect last payment information and incorrect charge off balances even though Wells Fargo received Plaintiff's full

Settlement sum.

132. After receiving notice of Plaintiff's First Dispute and Third Dispute, and possessing actual knowledge that the Account was fully satisfied, Wells Fargo nevertheless inaccurately refused to update or delete the Account and instead verified the Account with conflicting monthly history information, derogatory monthly history information in months after April 2022, and an inaccurate charge-off balance following Plaintiff's Settlement payment to Wells Fargo.

133. Further, despite receiving notice of Plaintiff's First Dispute and Third Dispute from Trans Union, Wells Fargo did not request that Equifax or Experian update their respective reporting of the Account.

134. The immediately-aforementioned inaccuracies and misleading information on the Account ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files.

135. Wells Fargo's investigations were not conducted using all information reasonably available to Wells Fargo including but not limited to: inquiry of Plaintiff, review of its own account notes, review of its own payment history, review of its own account balance status.

136. Wells Fargo's investigations were not conducted in good faith because Wells Fargo failed to investigate, consider, and review the aforementioned information and all information reasonably available to Wells Fargo.

137. As a result of Wells Fargo's conduct, actions, or inactions, Plaintiff was unable to obtain or maintain credit at market rates and terms for individuals who did

not have outstanding, late, or past-due balances reported on their credit reports.

138.   Wells Fargo's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

139.   Wells Fargo's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.   Judgment against Defendants for maximum statutory damages for violations of the FCRA;

b.   Actual damages in an amount to be determined at trial;

c.   Compensatory damages in an amount to be determined at trial;

d.   Punitive damages in an amount to be determined at trial;

e.   An award of attorney's fees and costs; and

f.   Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

23

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Aaron M. Swift*
**Aaron M. Swift, Esq., FBN 0093088**
Jordan T. Isringhaus, Esq., FBN 0091487
Sean E. McEleney, Esq., FBN 125561
Jessica A. Cowan, Esq., FBN 1069016
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 490-9919
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
smceleney@swift-law.com
jcowan@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*